Gen. 173]                                                                          173

**HEALTH OCCUPATIONS**

**PHYSICIANS − PHYSICIAN ASSISTANTS − REGULATION OF PRESCRIBING AND DISPENSING OF DRUGS BY PHYSICIAN ASSISTANTS**

February 1, 1995

*The Honorable Martin P. Wasserman*
*Secretary of Health and Mental Hygiene*

Your predecessor as Secretary of Health and Mental Hygiene requested our opinion on the interplay between the Maryland Physician Assistants Act and the Maryland Pharmacy Act. Specifically, Secretary Sabatini's question was whether the Board of Physician Quality Assurance may adopt regulations permitting physician assistants to write prescriptions for, and dispense medication to, patients in hospitals and other health care settings.

For the reasons stated below, we conclude as follows: The Board has authority to adopt a regulation specifying the circumstances under which the job descriptions of physician assistants may include prescribing. A regulation may not authorize physician assistants to dispense prescription medicines, however.[1]

We recognize that the State Board of Pharmacy and others have serious reservations about the wisdom of allowing physician assistants, given the nature of their training, to write prescriptions. At the same time, physician assistant organizations and others strongly advocate the utility of this type of delegation. We should not and do not enter this debate, which the Board of Physician Quality Assurance will resolve in its rulemaking proceeding if the General Assembly does not do so by amending the Physician Assistants Act or the Pharmacy Act. This opinion reflects our

---

[1] This opinion generally concurs with advice previously given to the State Board of Pharmacy and the Board of Physician Quality Assurance. Memorandum from Assistant Attorneys General Geoffrey J.C. Boyd and C. Frederick Ryland (December 9, 1992). The question posed to us does not call for a discussion of federal regulations relating to controlled dangerous substances.

interpretation of current law; we leave the policy judgments to others.

# I

## Prescribing

### A.   *Scope of Practice of Physician Assistants*

With certain exceptions that are not relevant here, "an individual shall be certified by the Board before the individual may practice as a physician assistant."   §15-301(b)(1) of the Health Occupations ("HO") Article, Maryland Code.   In general, to "practice as a physician assistant" is to perform "medical acts delegated to a physician assistant under this title."   HO §15-101(i). The scope of practice of a certified physician assistant is limited to:

> (i)  Services within the training or experience of the physician assistant;
>
> (ii)  Services customary to the practice of the supervising physician;
>
> (iii) Services delegated by the supervising physician; and
>
> (iv)  The approved job description from the Board.

HO §15-301(a)(1).   Among the patient services that a physician assistant may perform are "[i]nterpreting and evaluating patient data as authorized by the supervising physician for the purpose of determining management and treatment of patients," "[t]ranscribing or executing specific orders at the direction of the supervising physician," and "[o]ther medical acts permitted to be delegated under an approved job description."  HO §15-301(2)(iii), (vi)3, and (vii).

A "medical act" unquestionably includes prescribing medication. A "medical act" refers to acts that are within the scope of practice of medicine. *See Mashak v. Poelker*, 356 S.W.2d 713, 720 (Mo. App. 1962). Under HO §14-101(k)(2)(i), the "practice [of] medicine" includes "prescribing for ... any physical, mental, or emotional ailment or supposed ailment of an individual ...."

Thus, because a physician may prescribe medication as part of his or her practice of medicine, the physician may delegate that medical act to a physician assistant "under an approved job description." The job description must contain, among other things, a list of "all medical acts to be delegated to the physician assistant and the supervision to be performed," as well as a description of "the specialized training provided to the physician assistant and the supervision to be provided by the supervising physician." HO §15-302(b)(1)(i)(iii).

The Maryland Pharmacy Act does not itself inhibit the authority of a physician assistant to prescribe medication under an approved job description. Under HO §12-313(b)(14), a pharmacist who dispenses a drug for which a prescription is required "[w]ithout first having received a written or oral prescription for the drug from an authorized prescriber" is subject to professional discipline. *See also* HO §12-507(a) (requiring "authorized prescriber" to date prescriptions).

The term "authorized prescriber" is defined in HO §12-101(b) as follows:

> "Authorized prescriber" means any licensed dentist, licensed physician, licensed podiatrist, licensed veterinarian, certified nurse mid-wife to the extent permitted in §8-601 of this Article, *or other individual authorized by law to prescribe drugs, medicines, or devices.*"

(Emphasis added.)  A physician assistant who, under an approved job description, has been delegated the authority to write prescriptions would be an "individual authorized by law to prescribe drugs, medicines, or devices."  The "law" in this case is HO §15-301, as interpreted by the Board of Physician Quality Assurance. Hence, the physician assistant would be an "authorized prescriber."[2]

## B.    *Rulemaking Authority of the Board of Physician Quality Assurance*

Under HO §15-205(b)(1), "the Board shall adopt regulations to carry out provisions of this title" − that is, the Physician Assistants Act.   Should the Board determine that generally applicable standards or requirements ought to apply to job descriptions that delegate to physician assistants the authority to prescribe medication, the Board has authority to adopt those regulations.[3]

The Board's broad, express rulemaking authority in HO §15-205(b)(1) is unaffected by the recent failure of legislation specifically authorizing prescribing by physician assistants under some circumstances. *See* House Bill 1527 of 1994.  The defeat of this bill might be attributable to dissatisfaction with various aspects of it; its defeat does not necessarily reflect a policy decision that physician assistants should have not the authority to prescribe medication.  In any event, however one might speculate in this regard, the defeat of legislation of this kind is not a repeal of existing

_____

[2] For a discussion of the relationship between a prior version of the definition of "authorized prescriber" and other law authorizing a health care practitioner to write prescriptions, see 71 *Opinions of the Attorney General* 142 (1986).

[3] Until they were repealed in 1991, Board regulations prohibited the delegation to a physician assistant of the duty to prescribe or dispense drugs.  Former COMAR 10.32.03.06.  The Board's existing regulations governing physician assistants do not expressly address the circumstances under which physician assistants may prescribe medication.  In 1991, the Board addressed the matter in a policy statement that, not having been adopted as a regulation, was legally unenforceable.  §10-125(d)(3) of the State Government Article, Maryland Code.  *See* 78 *Opinions of the Attorney General* 8 (1993); 76 *Opinions of the Attorney General* 3 (1991); 57 *Opinions of the Attorney General* 478 (1972).  Since that time, the Board has been participating in a legislative review of the topic and working on draft regulations.

statutory authority.  *See, e.g., American Trucking Ass'ns v. Atchinson, T. & S.F. Ry.*, 387 U.S. 397 (1967) (agency rulemaking authority unaffected by Congress' failure to amend statute to authorize the rules); *FTC v. Dean Foods Co.,* 384 U.S. 597 (1966) (agency jurisdiction unaffected by Congress' failure to enact legislation conferring jurisdiction); 79 *Opinions of the Attorney General* 347 (1994) (existing agency authority to implement "family cap" limitation on welfare benefits unaffected by amendment deleting "family cap" provision from welfare reform bill); 77 *Opinions of the Attorney General* 110 (1992) (existing agency authority to implement prescription drug discount program unaffected by General Assembly's failure to pass departmental legislation conferring specific authority).

Should the Board decide to adopt regulations governing prescribing by physician assistants, in our opinion the Board is not required to adopt such a regulation jointly with the State Board of Pharmacy.  To be sure, HO §15-301(d)(1) provides that, "if a duty that is to be delegated under this section is a part of the practice of a health occupation that is regulated under this article by another board, any rule or regulation concerning that duty shall be adopted jointly by the Board of Physician Quality Assurance and the board that regulates the other health occupation."  A regulation determining the circumstances under which a physician assistant may write a prescription, however, does not deal with "a part of the practice of a health occupation that is regulated ... by another board ...."

The practice of pharmacy does not include prescribing medication, however. *See* HO §12-101(j).[4] Although a pharmacist's

---

[4] This definition is as follows:

>     (1)  "Practice pharmacy" means to engage in any of the following activities:
>     (i)    Selecting, preparing, and dispensing drugs, medicines, or devices;
>     (ii) Providing information and explanation to patients and health care practitioners about the safe and effective use of drugs, medicines, or devices; or
>     (iii) Identifying and appraising problems concerning the use or monitoring of drug therapy.

(continued...)

scope of practice does include an obligation to refrain from dispensing drugs on the prescription of someone who is not an "authorized prescriber," physician assistants would be "authorized prescribers" to the extent permitted by the Board of Physician Quality Assurance. *See* Part IA above. *Cf.* 76 *Opinions of the Attorney General* 3 (1991) (when an activity proposed to be undertaken by physical therapists falls within the scope of practice of chiropractic, nevertheless Physical Therapy Board alone has regulatory jurisdiction to decide whether activity is permissible for physical therapists).

## II

### Dispensing

The definition of "practice [of] medicine" in HO §14-101(k) does not explicitly include the dispensing of prescription medication by a physician. While the dispensing of medication might be comprehended by some of the broad language in that definition, the physician's explicit authority to dispense derives from provisions in the Pharmacy Act. HO §12-102(c) (d), (f), and (g) set forth carefully limited circumstances under which specified health care practitioners, including physicians, may personally dispense medication. *See also* HO §12-102(a)(3) (definition of "personally preparing and dispensing").[5] By contrast with the definition of "authorized prescriber," these provisions on dispensing do not give authority to dispense to "other individual[s] authorized by law." Particularly in light of that omission, we read these provisions as intended to limit the dispensing of medication to the physician personally. In our opinion, the dispensing of medication may not be delegated to a physician assistant.

---

[4] (...continued)

> (2) "Practice pharmacy" does not include the operations of a person who holds a permit issued under §§12-601 and 12-602 of this title.

The latter paragraph refers to manufacturers and distributors.

[5] HO §12-102(e) deals with the distinct act of "administering a prescription drug in the course of treating a patient." Our discussion of dispensing by a physician assistant does not apply to administering.

## III

## Conclusion

In summary, it is our opinion that the Board has authority to adopt a regulation specifying the circumstances under which the job descriptions of physician assistants may include prescribing. A regulation may not authorize physician assistants to dispense prescription medicines, however.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*